OPINION UPON A PETITION FOR A RE-HEARING.
Our ruling in Apperson vs. Bynum, was to this effect ; that, although it was clearly settled that, as against the indorser, when a note is payable at a certain place, it must be there presented for payment, yet, that, where this had become impracticable, demand at such place is excused.
It is true, the Court, in Roberts vs. Mason, 1 Ala., go on to hold, that where it is impracticable to make presentment at the place named in the face of the *356 note, the holder is not bound to call on the maker for payment, and the reason given is as follows: One of the conditions on which the liability of the maker depended, it became impossible to perform by reason of the place where the note was payable ceasing to exist, previous to the maturity of the note. This was without the instrumentality of the holder; and it could not be held to inturpolate the contract of indorsement, so as to make the indorser’s liability depend upon the performance of a condition by the indorsee, which did not constitute a part of the original contract.
To apply the rule laid down as above, to this case, Apperson was not bound under the contract, to present the note to Lundy for payment,. because the contract was, that, on maturity, it was to be duly presented for payment, i. e., at the Branch of the Union Bank. But the Bank as an institution, i. e., as the Branch of the Union Bank at Memphis, ceased to exist before the note matured. It became impracticable to comply with this condition of the contract. It was not the fault of Apperson, or by his instrumentality; and this being so, he was not bound to make demand of Lundy, the maker, because that was to make Bynum’s liability depend an a' condition which was not in the contract. It is very clear, upon a close examination of Roberts vs. Mason, that it is a strong authority in favor at least, of the position that Apperson, while he may not have been bound to present the note to Lundy, was not bound to have presented the note for payment at the place where it was payable, because the Bank had ceased its operations in this respect, viz: The office *357 of discount and deposit of the Bank of the United States, where the note, in Roberts vs. Mason, was payable after its sale to the Bank of Mobile, was subject to the Bank of the United States, and the Bank of Mobile was the agent of the Bank of the United States, and was at the time of the maturity of the note, in Roberts vs. Mason, engaged in settling the affairs of the office of discount and deposit of the Bank of the United States. Under these circumstances, the Supreme Court of Alabama hold this language:
“The proof shows that the place of payment ceased to exist previous to the maturity of the note; the office of discount and deposit, being sold to the Bank of Mobile, and this latter institution, the agent of the Bank of the United States. This being the case, it was impossible for the holder to have presented the note for payment on the day it became due; and there was no necessity, as we. have seen, to have deposited with the Cashier at an earlier period.”
Certainly, if the holder was excused from making a demand of the note, in that case, at the' place where, by the contract, it was to be presented, Apperson was excused from making any demand at the Branch Bank at Memphis.
But, it is now insisted, on the application for a rehearing, that Apperson should have given notice to Bynum of the circumstances, or the fact that made it impracticable for him to present the note at the Bank, and that this would have been sufficient, and was the only and correct mode of proceeding, to hold him bound on his contract as indorser; We have been *358 shown no authority for this course as being the only one necessary or proper in such a case. The argument comes to this: Apperson was excused from presenting the note for payment at the Bank in Memphis, because the Bank had ceased to exist. No presentment at any place was necessary. He was not bound to present the note to Lundy; and, therefore, his demand of Lundy, and giving Bynum notice of that demand discharged Bynum, because no demand at all was necessary, but simply, a notice should have been given Bynum that he, Apperson, could make no demand at the place of payment; in the absence of which notice, Bynum was discharged.
We cannot assent to the position or the force of the reasoning.
When we consider the object of making the demand, it seems to us that, if the demand cannot be made at the place where the note is payable, if any demand at all were necessary, where it became impracticable to make the demand at the place where the note was payable, that, although the holder may not he hound to make demand of the maker, in person, it is the next best thing that can be done; and that, whether the holder is bound to make such presentation to the maker or not, yet, that if he does it, and immediately notifies the indorser of the fact, it will be sufficient; certainly, we think as sufficient as if he notified the in-dorser that he had not made any presentment or demand; even though he embodied' in the notice to the endorser, the reasons for his failure and inability to present the note at the. place where it was payable.
*359 If no place of payment was specified in the note, presentment might be made to the acceptor or maker himself; and it is difficult to see why, if this is sufficient in the case of a note payable, generally, a demand of the maker, (if a demand at all were necessary,) where a note payable at a particular place cannot be presented at that place, would not be .good if presented to the maker and notice duly given to the indorser. By the contract, the indorser undertakes, if the note is not paid upon presentment at maturity, and notice is duly given, he, the indorser, will pay the note. Now, in this case, the note was not paid at maturity, and could not be presented at the place where payable, and as a matter of course, no notice could be given of a presentment being made, that could not he made. Is the indorser discharged ? Certainly not. In a case where there is no person on whom demand can be made, the indorser is liable without presentment; and for a reason equally as strong, he would be held liable, where the place at which the note is payable had ceased to exist, and the holder presented the note to the maker, and gave due notice, of the presentment, and of the failure of the maker to pay.
In giving the notice to the maker, the holder may be doing what he is not hound to do, but he is certainly ascertaining the fact that the note will not be paid, from the only one who can be expected to pay the note, where the payment at the place mentioned in the note cannot be obtained; and this course and notice to the ' indorser thereof best subserves the ob *360 jects of presentment and notice, under the circumstances. The holder thus. acting, has done even more, perhaps, than he was bound to do, in endeavoring to have the note paid, by giving the maker an opportunity to pay it before looking to the indorser; and the indor-ser, getting timely notice of the presentment to the maker and • refusal of payment, can set about to secure himself in regard to his liability on the note.
But it is urged that the endorser, seeing from the notice that demand was not made at the place of payment mentioned in the note, sees that he is discharged because there has been a failure on the part of the indorsee or holder to comply with his part of the contract, i. e., of performing a condition precedent to the indorser’s liability, which we have seen was ’ impos. sible. I think that the question whether he is discharged is not for the indorser to determine; though he may come to a conclusion in relation thereto, that does not determine his liability. If the holder was not bound to make the presentment at the place of payment, under the circumstances, he is excused in the law, from making such presentment; and bringing notice home to him of the' circumstances operating to excuse such presentment, does not, and cannot alter the fact that the holder is excused from making such presentment.
On the other point raised in argument, on the application for a re-hearing, we think there is not much difficulty. -We are satisfied with our ruling, that Ap-' person on the one hand, and Lundy and Bynum on the other, sustained the relation of enemy, so long as the *361 condition of hostility mentioned in the Act of Congress, of 13th July, 1861, continued, and no longer; and, if this condition of hostility had ceased on the 25th May, 1865, then they no longer sustained that relation.
Can the courts determine when this condition of hostility ended ? To say that they cannot, is to say that they cannot take that cognizance of events in the current history of the times, which has never been seriously questioned. The President’s proclamation declaring that certain States and sections, and the inhabitants of certain States and sections, were no longer in rebellion, was but a declaration or proclamation of a fact which already existed. There is a marked distinction between the right to carry on trade, which had been expressly interdicted by the Act of Congress, until the President should issue his Peace Proclamation, and the fact of a change in the enemy-relation which the war itself brought about. Even in the case of particular sections, occupied and controlled by the national authority, as we have seen, the former relation or condition of the inhabitants of such section was changed by that occupation, even before the Peace Proclamation, and before the war had ended; and as this occupation extended, the same result, as affecting the citizens of such occupied sections, followed; and the enemy relation, under the policy of the Legislative and Executive Departments, as expounded by the Supreme Court of the United States, ceased. When the occupation became universal, so far as the whole country was concerned, and the organized armies of the entire section lately in rebellion surrendered, it was a fact *362 the Courts must know without the aid of a public proclamation declaring the fact.
We may admit the force of the adjudications referred to, and the general principles laid down in the case of the United States vs. 129 Packages, 2 Amer. Law Register, 419, decided in September, 1862, concerning the power of the political departments of the government to decide when war has commenced and ended, and the force of the general doctrine that the courts must follow the decision of the political power. These are earnestly relied on in argument by the counsel for defendant in error; but we think it a sufficient answer to all this, to refer again to the doctrine of the enemy relation, as expounded by the Supreme Court of the United States in 1864, in. the Venice, which is found on page 277 of 2 Wallace, and which has not been overturned in any subsequent adjudications of that high tribunal.